Filed 1/18/24  P. v. Meza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>ALICIA ROSINA MEZA,<br><br>    Defendant and Appellant. | F085771<br><br>(Super. Ct. No. SC063320A)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Poochigian, Acting P. J., Franson, J. and DeSantos, J.

**INTRODUCTION**

In 1996, a jury convicted petitioner Alicia Rosina Meza of the first degree murder of Isidro Soto Cardinas (Pen. Code,[1] § 187, subd. (a), count 1).[2]  On count 1, the jury found true the special circumstance that petitioner committed the murder while engaged in the commission or attempted commission of robbery (§ 190.2, former subd. (a)(17)(i)) and that she personally used a firearm in the commission or attempted commission of the offense (§ 12022.5, subd. (a)).  For this offense, the trial court sentenced petitioner to a term of life in prison without the possibility of parole.  (*People v. Meza* (Oct. 30, 1997, F025822) [nonpub. opn.] (*Meza I*).)

In 2019, petitioner filed her first petition for resentencing on her murder conviction pursuant to former section 1170.95 (now § 1172.6).[3]  The trial court summarily denied this petition without providing a statement of reasons.  On May 6, 2022, this court affirmed the denial and "conclude[d] petitioner cannot demonstrate prejudice because the special circumstance finding [(§ 190.2, former subd. (a)(17)(i))] establishe[d] she is ineligible for resentencing as a matter of law."  (*People v. Meza* (May 6, 2022, F081612) [nonpub. opn.] (*Meza II*).)[4]

On September 21, 2022, after this court issued remittitur in *Meza II*, petitioner filed a second petition for resentencing in response to our Supreme Court's decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).  In *Strong*, our Supreme Court held a

---

**1**  All further statutory references are to the Penal Code.

**2**  Petitioner was convicted of additional offenses and enhancements, as described below.

**3**  Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the current section 1172.6 in this opinion.

**4**  On May 25, 2023, this court took judicial notice of the record on appeal in *Meza II*, *supra*, F081612.

pre-*Banks*/*Clark*[5] felony-murder special circumstance finding does not render a section 1172.6 petitioner ineligible for relief as a matter of law. (*Id*. at p. 721.) Subsequently, the trial court summarily denied the second petition at the prima facie stage.

On appeal, petitioner contends that because of *Strong*, she has established a prima facie case for entitlement of relief because the special circumstance finding cannot establish her ineligibility for resentencing as a matter of law because her conviction predates *Banks*/*Clark*. Therefore, she argues she has established a prima facie case for relief under section 1172.6 entitling her to an evidentiary hearing.

We conclude that based on *Strong* and our Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), we must vacate the trial court's order and remand the matter for the court to conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).[6]

---

**5**    *People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522.

**6**    Petitioner further contends she should not be precluded from filing a "successor petition citing new authority" and that the section 12022.5, subdivision (a) finding did not preclude relief under section 1172.6. The People concede that the "*Strong* holding is a significant intervening change in the law which provides an exception to issue preclusion" (see *People v. Farfan* (2021) 71 Cal.App.5th 942, 951 [" 'Because of the change in the applicable law … the petition is not subject to the procedural bar of successiveness' "], and that the "jury finding on the firearm enhancement under section 12022.5, subdivision (a) does not preclude a prima facie finding under section 1172.6." We accept the People's concessions and do not address these additional contentions in this appeal.

## PROCEDURAL BACKGROUND[7]

On July 27, 1995, the Kern County District Attorney filed an information charging petitioner with the first degree murder of Cardinas (§ 187, subd. (a), count 1), with the special circumstance that petitioner committed the murder while engaged in the commission or attempted commission of robbery (§ 190.2, former subd. (a)(17)(i)) and a firearm enhancement (§ 12022.5, subd. (a)), and two counts of robbery (§ 212.5, subd. (c), count 2 (Alfredo) & count 3 (Fermin)).

On January 22, 1996, a jury convicted petitioner of first degree murder (§ 187, subd. (a), count 1), two counts of robbery (§ 212.5, subd. (c), counts 2 & 3) and found true the robbery special circumstance and firearm enhancement. As to count 1, the trial court sentenced petitioner to a term of life without the possibility of parole, with a four-year term for the firearm enhancement. On count 2, the court sentenced petitioner to the middle term of three years to be served consecutive to count 1. On count 3, the court sentenced petitioner to the middle term of three years to be served consecutive to count 2, with all but one year stayed until successful completion of counts 1 and 2.

In her direct appeal in *Meza I*, petitioner argued there was insufficient evidence to support the robbery special circumstance because the evidence did not show the murder was committed to carry out or advance the commission of the robbery. (*Meza I*, *supra*, F025822.) This court disagreed and concluded:

> "The evidence was such that a rational trier of fact could have found that [petitioner] murdered Cardinas to prevent him from escaping and going for help, the arrival of which could have thwarted the robbery. Accordingly, the evidence sufficiently showed that the robbery was not merely incidental to the murder, but that the murder was performed to advance the commission of the robbery. The requirements of section 190.2,

---

[7] The facts from our prior nonpublished opinion in petitioner's direct appeal (*Meza I, supra*, F025822) are irrelevant for resolving the issues presented in this appeal. (See § 1172.6, subd. (d)(3); see generally *People v. Flores* (2022) 76 Cal.App.5th 974, 987–988.) Therefore, we do not include a statement of facts in this appeal.

4.

subdivision (a)(17) … have thus been met and the special circumstance finding is valid." (*Meza I*, *supra*, F025822, fn. omitted.)

On June 24, 2019, petitioner, in propria persona, filed her first petition for resentencing on her murder conviction pursuant to section 1172.6. In the form petition, petitioner stated a complaint, information, or indictment was filed against her that allowed her to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; she was convicted of first or second degree murder at trial; and she could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. She also requested the court appoint counsel during the resentencing process. Petitioner did not check the boxes stating that she was not the actual killer; she did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; or that she was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. Lastly, petitioner did not check the box stating the murder victim was not a peace officer in the performance of his or her duties. (*Meza II*, *supra*, F081612.)

On June 28, 2019, the trial court appointed counsel to represent petitioner. The People then filed a response, arguing the petition should be dismissed based on the unconstitutionality of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). Petitioner, through appointed counsel, filed a reply. The court denied the People's motion to dismiss based on the unconstitutionality of Senate Bill 1437. The People then filed a motion to dismiss the petition, arguing the jury found petitioner was the actual killer and that she was a major participant acting with reckless disregard for human life, thereby establishing petitioner's ineligibility for resentencing relief. Petitioner submitted on the declarations made in her petition. On August 10, 2020, the court denied petitioner's petition for section 1172.6 resentencing without providing a statement of reasons. (*Meza II*, *supra*, F081612.)

5.

A timely appeal followed. On November 18, 2020, appellate counsel filed a *Wende*[8] brief that summarized the facts of the case, raised no issues, and asked this court to independently review the record. In an unpublished decision, we independently reviewed the record and concluded that no reasonable arguable factual or legal issues existed, and therefore, we affirmed the trial court's denial of the petition for resentencing. (*Meza II*, *supra*, F081612.)

On September 21, 2022, after *Strong* was decided, petitioner, in propria persona, filed a second petition for resentencing on her murder conviction pursuant to section 1172.6. In the form petition, petitioner stated a complaint, information, or indictment was filed against her that allowed her to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; she was convicted of first or second degree murder at trial or accepted a plea offer in lieu of a trial; she could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019; and she requested the trial court appoint counsel during the resentencing process.

On September 29, 2022, the trial court reappointed counsel to represent petitioner. No further motions were filed by appointed counsel or the People. On February 15, 2023, after both parties submitted on their previous motions, the court denied the second petition for section 1172.6 resentencing. Specifically, the court stated the following:

> "At this time the [c]ourt does deny the petition pursuant to [section] 1172.6. This case is a bit unique in that it has actually gone up on appeal before, and the appeal affirmed the lower [c]ourt's ruling. It also contemplated the new change in law, the change from [former section] 1170.95 to [section] 1172.6 and, yet again, affirmed that the denial of the petition was proper. At this time I concur with the appellate [c]ourt and deny the petition."

A timely appeal followed.

---

[8]     *People v. Wende* (1979) 25 Cal.3d 436.

6.

## DISCUSSION

### I. Applicable Law

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) "Under the felony-murder doctrine as it existed at the time of [petitioner's] trial, 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' [Citation.] Murders occurring during certain violent or serious felonies were of the first degree, while all others were of the second degree." (*Strong*, *supra*, 13 Cal.5th at p. 704.)

The Legislature passed Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "As amended by Senate Bill [1437], the text of section 189 provides no additional or heighted mental state requirement for the 'actual killer' prosecuted under a felony-murder theory; it requires only that '[t]he person was the actual killer.' " (*People v. Garcia* (2022) 82 Cal.App.5th 956, 967.) "In our view, the Legislature's purpose in revising the law as it relates to felony-murder liability was to ensure proportionate punishment for accomplices in the felony-murder context, and that the term 'actual killer' is meant to distinguish the person who actually caused the victim's death, including in circumstances where two or more persons participated in the felony." (*Id*. at p. 968.)

"Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief. [Citations.] Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to

7.

[s]ection 188 or 189' made by Senate Bill 1437. [Citation.] The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief. [Citations.] 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]' " (*People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. omitted.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to [s]ection 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only one element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of other elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463, italics omitted.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.… [¶] While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971

(*Lewis*).) "The jury instructions are part of the record of conviction and may be reviewed to make the prima facie determination." (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).)

## II.   Analysis

Petitioner contends she has established a prima facie case for entitlement of relief because the robbery special circumstance finding cannot establish her ineligibility for section 1172.6 resentencing relief as a matter of law.

In *Strong*, our Supreme Court articulated that a pre-*Banks* and *Clark* special circumstance finding does not negate the showing a petitioner could not presently be convicted of murder or attempted murder due to changes to sections 188 or 189 "because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements." (*Strong*, *supra*, 13 Cal.5th at p. 718.) However, "Senate Bill 1437 relief is unavailable if the defendant was either the *actual killer*, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life ….' " (*Id.* at p. 710, italics added.)

The People contend petitioner is ineligible for section 1172.6 relief as a matter of law because "the record of conviction establishes that [petitioner] was convicted as the actual killer." In support of this contention, the People direct this court to both the jury instructions and the trial testimony provided in the record. Irrespective of the underlying facts of this case, which we do not consider (see *Lewis*, *supra*, 11 Cal.5th at p. 974 ["[A]t the prima facie stage, … the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "]), the People argue "[t]he jury was instructed on first and second degree murder [citations], first degree felony-murder [citation], special circumstance murder [citation], and robbery

9.

[and] [t]he only theory presented by the prosecutor was that [petitioner] shot Cardinas during the commission of the robbery and was therefore guilty of first degree felony-murder." Therefore, "the record of conviction establishes that [petitioner] was the undisputed sole perpetrator of the murder, foreclosing relief on her second petition for resentencing." From the record, we find it difficult to perceive petitioner was not the actual killer. Nonetheless, the current state of statutory interpretation of sections 188, 189, and 1172.6 leads us to conclude petitioner must be accorded an evidentiary hearing.

Here, while the jury found true the robbery special circumstance allegation, the jury instructions permitted a true finding on the special circumstance under the now invalid felony-murder doctrine. (*Curiel*, *supra*, 15 Cal.5th at p. 471 ["[U]nder the jury instructions here, the findings the jury must have made are insufficient to conclusively establish that [petitioner] is liable for murder under current law"].) For example, in *Lopez*, the Fourth Appellate District, Division Three, dealt with a similar factual scenario:

> "[The] [d]efendant was prosecuted solely under the theory he was the actual killer and committed the robbery alone. The jury was not instructed on accomplice liability, aider and abettor liability, or on liability under the theory [the] defendant counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree or robbery. The jury was not instructed on liability by virtue of [the] defendant having been a major participant in the underlying felony. The instructions for felony murder [citation] and robbery-murder special circumstance [citation] had been modified to eliminate all theories of liability other than [the] defendant having committed robbery. Those instructions had been modified to tell the jury the prosecution had to prove '[t]he defendant committed robbery' … which is the language recommended by the bench notes to CALCRIM No. 730 if the prosecution's theory is the defendant committed the underlying felony. [Citation.] The prosecutor argued in closing that [the] defendant was the actual killer and committed the robbery. The prosecutor argued, '[N]ot only did this man, [the defendant], take [the victim]'s life, he took his wallet and he took his wife's jewelry.' [¶] … [¶]
>
> "The jury was instructed with CALCRIM No. 540A that to find [the] defendant guilty of felony murder, it had to find he committed robbery and

10.

'[w]hile committing robbery, the defendant caused the death of another person….' The jury was instructed with CALCRIM No. 730 that to find the robbery-murder special-circumstance allegation to be true, the jury had to find [the] defendant 'did an act that caused the death of another person….' On the subject of causation, the trial court instructed the jury as follows: 'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.'

"Thus, by returning guilty verdicts and a true finding on the robbery-murder special circumstance, the jury necessarily found that [the] defendant 'caused the death of another person' and 'did an act that caused the death of another person.' The jury necessarily found that the victim's death was the direct, natural, and probable consequence of [the] defendant's act and the death would not have happened without the act." (*Lopez*, *supra*, 78 Cal.App.5th at pp. 15–16, italics omitted.)

Although the "jury necessarily found that [the] defendant 'caused the death of another person' and 'did an act that caused the death of another person' " (*Lopez*, *supra*, 78 Cal.App.5th at p. 16), the court concluded that "[t]he record of conviction … does not permit us to say as a matter of law the jury found [the] defendant personally killed the victim." (*Id*. at p. 19.) The court reasoned "[t]he jury instructions created the *possibility* the jury convicted [the] defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer." (*Id*. at p. 20.) Specifically, "[t]he jury was not instructed it had to find [the] defendant personally killed the victim to convict him; the jury was instructed it only had to find [the] defendant committed an act that caused the victim's death." (*Ibid*.) " '[T]he jury could have taken a realistic view of the prosecution's circumstantial evidence and determined beyond a reasonable doubt that [the defendant] was involved in the robbery that resulted in the death, but that [the defendant] may or may not have been the actual killer.' " (*Ibid*.)

11.

This case is analogous to *Lopez*. Here, the trial court instructed the jury on murder (CALJIC No. 8.10), as well as first degree felony murder (CALJIC No. 8.21). Further, the jury was instructed regarding aider and abettor liability (CALJIC No. 3.01). As to first degree felony murder, the jury was instructed that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, *which occurs during the commission of or attempted commission of the crime of robbery is murder of the first degree* when the perpetrator had the specific intent to commit such crime. That is, to commit the crime of robbery." (Italics added.) With respect to the special circumstance instruction, the court instructed the jury as follows:

> "To find that the special circumstance, referred to in these instructions as murder in the commission of [r]obbery, is true, it must be proved:

> "1a. The murder was committed while the defendant was engaged in the commission or attempted commission of a [r]obbery; or

> "1b. The murder was committed during the immediate flight after the commission or attempted commission of a [r]obbery to which the defendant was an accomplice; and

> "2. The murder was committed in order to carry out or advance the commission of the crime of [r]obbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the [r]obbery was merely incidental to the commission of the murder."

As to each of these instructions, the jury was permitted to find the special circumstance true even if it concluded petitioner was not the actual killer. "The jury instructions created the possibility the jury convicted [petitioner] of felony murder and found to be true the robbery-murder special-circumstance allegation without finding [her] to have been the actual killer." (*Lopez*, *supra*, 78 Cal.App.5th at p. 20.) To find the special circumstance true, the jury was only required to conclude "the murder was committed while [petitioner] was engaged in the commission or attempted commission of

12.

a [r]obbery" or "the murder was committed during the immediate flight after the commission or attempted commission of a [r]obbery to which [petitioner] was an accomplice[.]" Nothing in this instruction required the jury to find petitioner was the actual killer, but rather permitted the jury to find petitioner guilty of special circumstance murder if it concluded a killing occurred as a result of her aiding and abetting in the robbery[9] (i.e., the old felony-murder rule).

The prosecutor's closing and rebuttal arguments support this conclusion. Although the prosecutor's primary theory was that petitioner shot the victim in the back,[10] he also instructed the jury it could convict petitioner if the victim died during the commission or attempted commission of the robbery, regardless of whether petitioner was the actual killer. Specifically, he argued the following:

---

[9] As noted above, a petitioner is also ineligible for section 1172.6 resentencing relief as a matter of law if it is determined the petitioner "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (§ 189, subd. (e)(2)). However, the prosecutor never argued petitioner aided and abetted murder, but rather argued she "aid[ed] and abett[ed] the commission of that robbery."

[10] For example, the prosecutor argued the following in his closing and rebuttal arguments:

> "[Petitioner] shoots and kills him, shoots him in the back. [¶] … [¶]

> "And whether [petitioner] pointed the gun and fired it intentionally or just pulled the gun out and holding it level … fired it and killed [Cardinas] makes no difference, either one of those is the felony murder rule because he dies during the commission of that robbery. [¶] … [¶]

> "I don't know if [petitioner] intended to pull the trigger or not, but it doesn't make any difference, [petitioner] killed somebody. [¶] … [¶]

> "Well, you've got to stop and ask yourself who was in the best position to know from the position of where the gun was fired. Person holding the gun, looking down the barrel at the target that got shot would know. And that person was [petitioner]."

13.

"I submit that if you find that [the robbery victim] was being robbed, and that's what the evidence supports, what you—then automatically what follows from that is you have to find that [Cardinas] died during the commission of that robbery while he was trying to assist [the robbery victim]. That's the felony murder rule, that's why it is a first degree murder. It automatically follows that that is a killing during the commission of a felony under the special circumstance rule. [¶] … [¶]

"Now, the first degree murder, if there was a robbery of [the robbery victim], if the robbery is still ongoing, then the death of [Cardinas] is a first degree murder."

Nonetheless, the People refer this court to numerous portions in the trial testimony to support their contention petitioner was the actual killer. However, "[i]n order to conclude [petitioner] is ineligible for relief as a matter of law, we would have to weigh the evidence and find [petitioner] to have been the actual killer, which would be impermissible at this [prima facie] stage." (*Lopez*, *supra*, 78 Cal.App.5th at p. 20.) Although petitioner was likely the actual killer, the record of conviction does not establish *as a matter of law* she was the actual killer.

Accordingly, because these instructions did not require the jury to conclude petitioner was the actual killer, but rather allowed it to find petitioner guilty if it concluded a death occurred during the commission or attempted commission of a robbery, the section 1172.6 petition satisfies the low threshold for a prima facie showing. (*Lewis*, *supra*, 11 Cal.5th at p. 972 [Holding that the threshold for a prima facie case for resentencing is " 'very low' "].) For these reasons, we conclude the trial court erred by denying petitioner's petition for resentencing without issuing an order to show cause. "Our opinion should not be read as indicating whether or not the trial court should grant [petitioner] resentencing relief. We make no comment on that issue: Exercising de novo review, we conclude only that [petitioner] has met [her] low burden of making a prima facie case for relief under section [1172.6]." (*Lopez*, *supra*, 78 Cal.App.5th at p. 20.)

14.

## DISPOSITION

The trial court's order denying the petition for resentencing under section 1172.6 is reversed. The matter is remanded with directions to the court to issue an order to show cause and conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).